1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES E. TURNER,<br><br>                              Petitioner,<br><br>v.<br><br>NEIL McDOWELL, Warden,<br>                              Respondent. | Case No.:  21cv0432-WQH (KSC)<br>**ORDER:**<br>**(1) DENYING PETITIONER'S MOTION TO DISMISS;**<br>**(2) DENYING PETITION FOR A WRIT OF HABEAS CORPUS; and**<br>**(3) DENYING A CERTIFICATE OF APPEALABILITY** |

Hayes, Judge:

On March 3, 2021, Petitioner James E. Turner, a state prisoner proceeding pro se, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1). On August 17, 2021, Respondent filed an Answer and lodged the state court record.  (ECF Nos. 14-15).  On September 7, 2021, Petitioner filed a Traverse.  (ECF No. 16).  On October 21, 2021, Petitioner filed a Motion to Dismiss this action with leave to amend his Petition after he seeks resentencing under a state law set to go into effect on January 1, 2022.[1]  (ECF No. 18).

---

[1] Although this case was referred to United States Magistrate Judge Karen S. Crawford pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and

# I.   Background

On July 27, 2007, Petitioner entered a guilty plea to voluntary manslaughter with a gang enhancement and was sentenced by San Diego County Superior Court Judge Joan P. Weber to twenty-one years in prison.  (ECF No. 15-1 at 29-33).  He claims here that his rights under the Sixth, Eighth and Fourteenth Amendments were violated when his 2019 state court petition for resentencing was denied (Claim One), and because the trial court failed to establish a factual basis for his plea, which lacks a factual basis (Claim Two). (ECF No. 1 at 5).

Respondent answers that habeas relief is unavailable because Claim One does not present a cognizable federal claim, is unexhausted, and lacks merit, and Claim Two is untimely, fails to present a cognizable federal claim, and lacks merit.  (ECF No. 14-1 at 17-27).  Petitioner replies that his claims are timely, exhausted, and meritorious, and requests an evidentiary hearing.  (ECF No. 16 at 1-2).  Petitioner's Motion to Dismiss seeks to dismiss his Petition without prejudice so that he can file an amended petition after he litigates a petition for resentencing in state court that he intends to file when a new state law takes effect January 1, 2022.  (ECF No. 18).

# II.   State Court Proceedings

An Information filed on March 28, 2006, in the San Diego County Superior Court charged Tony Lessie, Petitioner, and Petitioner's cousin Joseph Isaac Turner with the murder of Rusty Seau.  (ECF No. 15-1 at 10-12).  The Information alleged Lessie personally used a handgun during the commission of the murder, that all three men committed the murder for the benefit of, at the direction of, and in association with a criminal street gang, and that Petitioner and his cousin were principals in a murder in which at least one principal personally used a firearm.  (*Id.*).

The California Appellate Court described the facts of this case as follows:

---

Recommendation nor oral argument are necessary for the disposition of this matter.  *See* S.D. Cal. Civ. L.R. 71.1(d).

One evening in June 2005, 16-year-old Rusty [Seau] was walking down a street in Oceanside.  As he approached a residence, he was confronted by Turner, Turner's cousin Joseph, and Tony [Lessie].  A physical altercation ensued.  As Tony would confess, he pulled out a handgun during the fight and fired shots at Rusty, killing him.

(ECF No. 15-12 at 3).

Lessie was tried and testified he shot Seau as an initiation into Petitioner's gang but only after Petitioner threatened to beat or kill him if he did not shoot.  *People v. Lessie*, 47 Cal. 4th 1152, 1157 (2010).  On November 6, 2006, Lessie was acquitted of first degree murder but convicted of second degree murder with the use of a firearm, with the jury deadlocked on the gang enhancement.  On July 27, 2007, pursuant to a plea bargain, Petitioner pleaded guilty to the lesser included offense of voluntary manslaughter with a gang enhancement and stipulated that the preliminary hearing transcript provided a factual basis for his plea.  (ECF No. 15-1 at 31-33).  Petitioner was sentenced to a stipulated prison term of 21 years, consisting of the 11-year upper term for voluntary manslaughter with a 10-year gang enhancement.  (*Id*. at 29-33).

Petitioner did not appeal, but on November 1, 2007, he filed a habeas petition along with a request to withdraw his plea, contending it was coerced and there was no evidence to support the gang enhancement since Lessie had been acquitted of the same enhancement.  (ECF No. 15-3 at 1).  The trial court appointed advisory counsel, who reported to the court there was no legitimate basis to withdraw the plea (ECF No. 15-2 at 23-24), and the petition was denied for that reason after a hearing (ECF No. 15-3 at 1).  Petitioner filed a habeas petition raising the same claim in the appellate court, which denied relief on September 5, 2008, stating that Petitioner "has not shown his plea was other than knowing and voluntary and he received the benefit of the bargain."  (*Id*. at 1-2).

Petitioner filed a second habeas petition in the trial and appellate courts claiming he entered his plea while under the influence of prescription medication and his counsel was ineffective for not investigating the effects of the medication.  (ECF No. 15-4 at 1-2).  Those petitions were denied on May 6, 2009, and March 17, 2011, respectively because

there was no evidentiary support for the claims, which should have been raised in the prior habeas petition. (*Id*. at 1-6; ECF No. 15-5 at 5-9). Petitioner filed a third habeas petition in the appellate court alleging a conflict of interest with his trial attorney, which was denied on April 26, 2011, on the basis he failed to show the existence of a conflict and failed to raise the issue in the trial court. (ECF No. 15-6 at 1-2).

On January 1, 2019, Petitioner filed a petition for resentencing in the trial court pursuant to California Penal Code Section 1170.95, which sets forth a procedure for defendants convicted of felony murder or natural and probable consequences murder to petition to have their convictions vacated. (ECF No. 15-7 at 39-45). Petitioner relied on California Senate Bill 1437, which became effective the date of his petition for resentencing and amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless disregard for life." *People v. Martinez*, 31 Cal. App. 5th 719, 723 (2019). The trial court denied the petition on February 4, 2019, finding Petitioner was not eligible for relief because he had not been convicted of murder. (ECF No. 15-7 at 53-54).

Petitioner was appointed counsel and appealed the denial of his petition for resentencing, where he argued, as he does in Claim One, that the change in law contained in Senate Bill 1437 should apply to persons like him who risked a murder conviction under a theory of felony murder or natural and probable consequences murder but agreed to plead guilty to manslaughter. (ECF No. 15-9 at 10). On February 19, 2020, in a published opinion, the appellate court affirmed the denial of the petition for resentencing, finding that "the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95." *People v. Turner*, 45 Cal. App. 5th 428, 438 (Cal. App. Ct. 2020). The court stated:

Having found that Senate Bill 1437 does not extend to defendants convicted

4

of manslaughter, we acknowledge that in hindsight, Turner would have fared better by pleading guilty to murder. Because his liability would have been premised on Rusty's killing being a natural, probable, and foreseeable consequence of his participation in the assault, he could have petitioned for relief under section 1170.95. Instead, he pleaded guilty to voluntary manslaughter, in the process admitting every element of that offense.

*Id*. at 439 (noting that voluntary manslaughter is not a lesser included offense of felony murder or natural and probable consequences murder). The court expressed sympathy to Petitioner and defendants like him, stating that "[b]y admitting voluntary manslaughter, Turner seems worse off for pleading guilty to a crime he likely could not have committed." *Id*. at 440.

The appellate court went on to state that "[i]f there is a problem, it may lie in the adequacy of the factual basis for Turner's plea," as "a bare statement that a factual basis exists, without inquiry, is inadequate." *Id*. at 440. The court noted it was understandable that a judge provided with a charging document generically alleging murder and a stipulation to use the preliminary hearing transcript for a factual basis might not scrutinize whether the facts supported a factual basis for voluntary manslaughter because "voluntary manslaughter during a sudden quarrel or in imperfect self-defense 'is considered a lesser necessarily included offense of intentional murder.'" *Id*. at 432 n.5 (quoting *People v. Breverman*, 19 Cal. 4th 142, 154 (1998)). The appellate court concluded that a claim challenging the factual basis of the plea was not before it at that time. *Id*. at 441 n.10. Petitioner sought review in the state supreme court, which denied relief on May 13, 2020, in an order that stated: "The petition for review is denied. The request for an order directing depublication of the opinion is denied." (ECF No. 15-14 at 1).

On November 20, 2020, Petitioner filed a habeas petition in the state trial court claiming, as he does in Claim Two here, that the trial judge failed to ascertain a factual basis for his plea and the plea lacks a factual basis, as there is no evidence to support a voluntary manslaughter conviction or a gang enhancement. (*See* ECF No. 15-15 at 41). The trial court denied the petition on November 23, 2020, as untimely and on the basis that

Petitioner could have raised his claims in his prior state habeas petitions but did not, and in any case failed to make a prima facie showing of an entitlement to relief. (*Id*. at 40-42). On December 29, 2020, Petitioner filed a pro se habeas petition in the state appellate court raising the same claim. (*Id*. at 1-45). The appellate court denied relief on December 31, 2020, on the basis that: (1) the petition was barred by the failure to obtain a certificate of probable cause needed to attack the validity of a guilty plea, (2) the petition was untimely because it was filed more than 13 years after sentencing with no explanation for the delay, (3) the petition was barred as repetitive and successive to prior habeas petitions filed by Petitioner, and (4) claims challenging the sufficiency of evidence to support a conviction are not cognizable on habeas. (ECF No. 15-16 at 2). Petitioner raised the same claim in the state supreme court in a pro se habeas petition which was denied on May 12, 2021, in an order that stated: "The petition for writ of habeas corpus is denied. (See In re Waltreus (1965) 62 Cal.2d 218, 225 [courts will not entertain habeas corpus claims that were rejected on appeal].)" (ECF No. 15-18 at 1).

Petitioner states in his Motion to Dismiss that the California Legislature recently passed Senate Bill 775, which provides resentencing eligibility under Senate Bill 1437 for persons like him who pleaded guilty to manslaughter to avoid a murder conviction. (ECF No. 18 at 1-2). He requests this action be dismissed without prejudice so that he can amend his federal habeas petition after he has sought resentencing under Senate Bill 775, which is set to go into effect on January 1, 2022. (*Id*. at 1).

## III.   Petitioner's Claims

(1)  The trial court's order denying the petition for resentencing must be reversed because the court was unaware that Senate Bill 1437 and Penal Code Section 1170.95 applies to guilty pleas to manslaughter entered to avoid trial on charges which could lead to a murder conviction under the felony murder rule or a natural and probable consequences theory of murder. (ECF No. 1 at 5). The Petition summarily claims violations of the Sixth, Eighth and Fourteenth Amendments and references briefs filed in the state appellate and supreme courts on direct appeal of the denial of the petition for resentencing. (*Id*. at 5, 9-

6

54).  Appointed appellate counsel argued in those briefs that the trial court's denial of relief was predicated on an incorrect interpretation of state law in violation of federal due process. (ECF No. 15-9 at 12).  The Traverse clarifies that in addition to that federal due process claim, Petitioner is bringing claims for cruel and unusual punishment in violation of the Eighth Amendment for serving a prison term for a crime he did not commit, and denial of equal protection in violation of the Fourteenth Amendment because he was treated differently than defendants who benefit from the change in law.  (ECF No. 16 at 8).

(2)  The state court failed to ascertain a factual basis for Petitioner's guilty plea, which lacks a factual basis.  (ECF No. 1 at 5).  Although the Petition identifies no federal basis for this claim, Petitioner states in the Traverse that he is bringing the same Sixth, Eighth and Fourteenth Amendment claims as in Claim One.  (ECF No. 16 at 8-14).

## IV.   Discussion

As set forth herein, federal habeas relief is denied as to Claim One because the state court adjudication of the federal due process aspect is objectively reasonable and because the Eighth and Fourteenth Amendment aspects are procedurally defaulted and without merit.  Federal habeas relief is denied with respect to Claim Two because it is untimely. An evidentiary hearing is unnecessary on either claim.  Petitioner's Motion to Dismiss without prejudice to amend after he has sought resentencing under Senate Bill 775 is denied without prejudice to file a new federal habeas petition if his resentencing petition is denied.

### A.   Legal Standards

Under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, in order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

21cv0432-WQH (KSC)

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 407. In order to satisfy § 2254(d)(2), the factual findings relied upon by the state court must be objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To the extent the Court can reach the merits of federal claims which have not been adjudicated on the merits in state court, de novo review is required. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).  Under such a review, "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that (his) detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).  However, the reasoning on any related claim by the state court is relevant. *See Frantz v. Hazey*, 533 F.3d 724, 738 (9th Cir. 2008) (holding that where the reasoning of the state court is relevant it must be part of a federal habeas court's consideration even under de novo review).

## B.    Claim One

Petitioner alleges in Claim One that his rights under the Sixth, Eighth and Fourteenth Amendments were violated by the denial of his petition for resentencing under Senate Bill 1437 and California Penal Code Section 1170.95.  (ECF No. 1 at 5).  He incorporates by reference and attaches to the Petition in support of this claim state court briefs filed in the appellate and supreme courts by counsel on direct appeal of the denial of his petition for resentencing, which included as the sole federal claim that federal due process was denied because the state court erroneously interpreted state law.  (*Id*. at 5, 9-54; ECF No. 15-9 at

12, (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (reversing denial of federal habeas relief where "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue . . . [which] is inconsistent with due process of law.") and *United States v. Tucker*, 404 U.S. 443, 447 (1972) ("a sentence founded at least in part upon misinformation of constitutional magnitude" violates federal due process))).

Respondent answers that: (1) Claim One does not present a cognizable federal issue because it relies on an error of state law and this Court is required to defer to the state court finding that Senate Bill 1437 and California Penal Code § 1170.95 do not apply here, (2) Petitioner cannot transform his state law claim into a federal claim by summarily claiming violations of the Sixth, Eighth and Fourteenth Amendments as he has done in the Petition, (3) any federal claim is unexhausted because the federal nature of Claim One has never been presented to the state courts, and (4) the application of state law by the state courts to deny Claim One was not so arbitrary or capricious as to amount to a federal due process violation, the only possible cognizable federal claim. (ECF No. 14-1 at 17-22).

Petitioner replies that Claim One alleges his federal constitutional rights have been and are being violated because: (1) he was convicted of a crime for which he is actually innocent in violation of due process guaranteed by the Sixth Amendment, (2) he is serving a state prison sentence for a crime he did not commit which amounts to cruel and unusual punishment in violation of the Eighth Amendment, and (3) he is being denied equal protection of the laws in violation of the Fourteenth Amendment because he is being treated differently than defendants who benefit from the changes in the law by Senate Bill 1437 and California Penal Code Section 1170.95. (ECF No. 16 at 8). Petitioner contends he presented the essence of his federal claims to the state courts on direct appeal of the denial of his petition for resentencing, and argues that even to the extent they were not properly presented in state court and are now procedurally defaulted in this Court he is able to overcome the default by showing actual innocence. (*Id*. at 5-7).

Petitioner's appointed counsel presented Claim One to the state appellate court on direct appeal of the denial of his petition for resentencing, arguing that the trial court erred

in finding that the provisions of Senate Bill 1437 and California Penal Code Section 1170.95 did not apply to him simply because he was not convicted of murder, which violated federal due process because it was made based on an erroneous interpretation of state law.  (ECF No. 15-9 at 11-12 (citing *Tucker*, 404 U.S. at 447 ("a sentence founded at least in part upon misinformation of constitutional magnitude" violates due process) and *Townsend*, 334 U.S. at 741 (reversing denial of federal habeas relief where "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue . . . [which] is inconsistent with due process of law.")))).

The appellate court denied the claim in a reasoned opinion on the basis that Petitioner was not entitled to resentencing because California Senate Bill 1437 and California Penal Code Section 1170.95 do not apply to defendants like Petitioner who pleaded guilty to manslaughter to avoid a conviction for felony murder or natural and probable consequences murder.  (ECF No. 15-12).  The appellate court did not explicitly address the federal due process aspect of the claim, and the state supreme court summarily denied review without explanation.  (*Id.*; ECF No. 15-14.)  The state supreme court is presumed to have adopted the appellate court's reasoning.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.")

Although federal habeas relief is generally not available for claims based solely on state law violations, there is a well-established exception where a state court's application of state law is arbitrary or capricious.  *See Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (holding that a state court's application of state law does not rise to the level of a federal due process violation unless it was so arbitrary or capricious as to constitute an independent due process violation); *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("Federal courts will not review a state supreme court's interpretation of its own statute unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution.")  In addition, "[u]nder

the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) ("The issue for [a federal habeas court], always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.")  And, as Petitioner's appointed counsel pointed out to the state appellate court, federal due process may be violated where a state court relies on an erroneous interpretation of the facts or law.  *See Townsend*, 334 U.S. at 741 (reversing denial of habeas relief where counsel "could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play"); *Tucker*, 404 U.S. at 447 ("a sentence founded at least in part upon misinformation of constitutional magnitude" violates federal due process).

Although Respondent is correct that Petitioner cannot federalize Claim One by presenting a conclusory statement in the Petition that his rights under the Sixth, Eighth and Fourteenth Amendments were violated, "[t]he Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *see also Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner petitions is especially important as to which claims are presented).  Under such a liberal construction of the pleadings in this action, Petitioner alleges the denial of his petition for resentencing resulted in fundamental unfairness in violation of (1) due process protected by the Sixth Amendment because the denial of his petition for resentencing was based on an incorrect interpretation of state law resulting in his conviction for a crime he did not and could not have committed to remain in place, (2) cruel and unusual punishment in violation of the Eighth Amendment because he is serving a term of imprisonment for a crime he did not commit, and (3) denial of equal protection of the laws in violation of the Fourteenth Amendment because he is being treated differently than defendants who benefit from the changes in the law by Senate Bill 1437

and California Penal Code Section 1170.95.[2]  (ECF No. 16 at 8).

Habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison must first exhaust state judicial remedies.  28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987).  To exhaust state judicial remedies, a California state prisoner must present the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition.  28 U.S.C. § 2254(b), (c); *Granberry*, 481 U.S. at 133-34.  The Court can deny habeas relief on the merits of an unexhausted claim but only when it does not present a colorable claim.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."); *but see Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005) (holding that a claim may be denied under 28 U.S.C. § 2254(b)(2) only where "it is perfectly clear that the petitioner has no hope of prevailing").

The Court rejects Petitioner's contention that he submitted any of the federal bases of Claim One to the state courts other than his federal due process claim.  His briefs in the state courts on direct appeal of the denial of his petition for resentencing were drafted by appointed counsel and do not reference any federal claim other than a due process violation arising from the state court applying a misinterpretation of state law.  The briefs did not place the state courts on notice that Petitioner was raising an Eighth or Fourteenth Amendment claim.

Nevertheless, the Eighth and Fourteenth Amendment bases for Claim One are now technically exhausted despite the failure to raise them in state court because Petitioner no longer has state court remedies available to him.  *See Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) ("[T]he district court correctly concluded that [the] claims were

---

[2]  To the extent Petitioner erred in failing to articulate the complete federal nature of Claim One in the Petition rather than in the Traverse, given his pro se status and the lack of prejudice to Respondent, the Court would grant leave to amend the Petition to include the entire federal basis for the claims to cure any pleading defect.

nonetheless exhausted because 'a return to state court for exhaustion would be futile.'"); *Cassett*, 406 F.3d at 621 n.5 ("A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer 'available' to him." (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991))); *see also Coleman*, 501 U.S. at 735 n.1 (holding that a procedural default arises when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").   It has been nearly one and a half years since the direct appeal of the denial of Petitioner's petition for resentencing became final by the denial of his petition for review in the state supreme court on May 13, 2020 (ECF No. 15-14), and it is clear that were Petitioner to return to state court now in an attempt to re-present two new federal bases for the same claim he would be untimely under state law. *See Walker v. Martin*, 562 U.S. 307, 312-21 (2011) (holding that California's timeliness rule requiring that a petitioner must seek relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied); *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003) ("We conclude that because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground."); *Coleman*, 501 U.S. at 735 (federal habeas review if precluded where a state procedural bar rests on a state ground which is "independent" of federal law and "adequate" to forever bar federal review); *see also Harris v. Reed*, 489 U.S. 255, 268 (O'Connor, J., concurring) ("[I]n determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, indeed required, to assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim.")

The Court can address the merits of the procedurally defaulted claims if Petitioner can demonstrate cause for his failure to satisfy the state procedural rule and prejudice arising from the default, or that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim. *Coleman*, 501 U.S. at 750.   As

discussed below, Petitioner alleges he can overcome the default by showing he is actually innocent.  *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (fundamental unfairness needed to overcome a procedural default may be shown where petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent").

### 1.  Federal due process

Petitioner claims the state court incorrectly found he was not eligible for resentencing under Senate Bill 1437 and California Penal Code Section 1170.95 and violated federal due process by relying on that incorrect reading of state law in denying his petition for resentencing.  The Court looks through the silent denial by the state supreme court to the last reasoned state court decision and applies the provisions of 28 U.S.C. § 2254(d) to the appellate court opinion on direct appeal, which states:

> Turner's statutory eligibility presents a question of law.  We independently consider the scope of Senate Bill 1437 to assess whether it provides relief to a defendant like Turner who was convicted of manslaughter by plea. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71, 192 Cal.Rptr.3d 309, 355 P.3d 480 (de novo review).)  As with any question of statutory interpretation, "our primary task is to give effect to the Legislature's intended purpose in enacting the law." (*People v. Hubbard* (2016) 63 Cal.4th 378, 386 (*Hubbard*).)  "We begin with the statute's text, assigning the relevant terms their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme. (Citation.)  Essential is whether our interpretation, as well as the consequences flowing therefrom, advances the Legislature's intended purpose. (Citation.)  Where the statutory text admits of more than one reasonable interpretation, we may consider various extrinsic aids—including the legislative history—to the extent they are helpful in illuminating that purpose." (*Ibid*.)

>     a.    *Defendants Who Pled Guilty to Voluntary Manslaughter Are Not Entitled to Relief.*

> Subdivision (a) of section 1170.95 allows "(a) person convicted of felony murder or murder under a natural and probable consequences theory" to file a petition "to have (his or her) *murder* conviction vacated and to be

resentenced on any remaining counts." (Italics added.) Likewise, section 1170.95, subdivision (d) defines the available relief as the vacating of a "*murder* conviction." (Italics added.) As the People suggest, the petitioning prerequisites and available relief indicate that the Legislature intended to limit relief to those convicted of *murder* under a theory of felony murder or natural-and-probable-consequences murder. Indeed, the Legislature declared in uncodified portions of Senate Bill 1437 that it sought "to amend the felony murder rule and the natural and probable consequences doctrine, *as it relates to murder*," to limit circumstances in which "*murder liability*" may be imposed. (Stats. 2018, ch.1015, § 1, subd. (f), italics added in both quotes; see *People v. Valenc*ia (2017) 3 Cal.5th 347, 362 ("'In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration.'").)

Relying on the clear language of the statute, courts including ours have concluded that section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter. (*People v. Cervantes*, 44 Cal.App.5th 884, 886 (2020) ("The plain language of the statute is explicit; its scope is limited to murder convictions."), accord, *People v. Flores* (2020) 38 Cal.App.5th 1087, _____ (2020), 2020 Cal.App. Lexis 83, p. *9. For similar reasons, other courts have rejected claims that the statute extends relief to those convicted of attempted murder. (*Lopez*, *supra*, 38 Cal.App.5th at p. 1104, rev. granted; *Munoz*, *supra*, 39 Cal.App.5th at p. 754, rev. granted; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1015-1016; *People v. Larios* (2019) 42 Cal.App.5th 956, 970.) These decisions reason that the statutory scheme unequivocally applies only to murder convictions. (E.g., *Cervantes*, *supra*, 44 Cal.App.5th at 886; *Munoz*, at p. 754.)

Turner reads Senate Bill 1437 to potentially provide relief for defendants convicted of voluntary manslaughter by plea, relying on language in subdivision (a)(2) of section 1170.95 referencing one of the conditions a petitioning defendant must satisfy. Such a defendant must declare that he or she "was convicted of first degree or second degree murder following a trial *or accepted a plea offer* in lieu of a trial at which the petitioner could be convicted of first or second degree murder." (§ 1170.95, subd. (a)(2), italics added.) Turner emphasizes that this provision does not expressly require a defendant to have accepted a plea offer for *murder*, but he ignores the introductory language in section 1170.95, subdivision (a) that limits petitions to persons "convicted of . . . *murder*." (Italics added.)

Moreover, even if Turner were correct that an ambiguity exists, the

legislative history demonstrates he is not entitled to relief.   (See also *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 (even "if the statutory language is clear and unambiguous," a court may consult legislative history to "determine whether the literal meaning of a statute comports with its purpose").)   A year before Senate Bill 1437 was enacted, the Legislature passed a resolution highlighting the need for reform "to limit convictions and subsequent sentencing in both felony murder cases and aider and abettor matters prosecuted under (the) 'natural and probable consequences' doctrine."  (Sen. Conc. Res. No. 48, Stats. 2017 (2017-2018 Reg. Sess.), res. ch. 175 (Senate Concurrent Resolution 48).)  The "whereas" clauses in Senate Concurrent Resolution 48 noted the harsh sentences for persons convicted of first- and second-degree murder, low rates of parole, and less culpable mental states for liability based on felony murder and natural-and-probable-consequences murder.  (*Ibid*.)  Citing *Medina*, *supra*, 46 Cal.4th 913, which held gang members liable for a fatal shooting by their codefendant during an assault, Senate Concurrent Resolution 48 expressed concern that "individuals lacking the mens rea and culpability for murder (were) being punished as if they were the ones who committed the fatal act." (Sen. Conc. Res. 48, *supra*.)  With the Assembly concurring, the Senate resolved to consider reforms to calibrate a defendant's punishment to his or her culpability.  (*Ibid*.; see generally, *Lopez*, *supra*, 38 Cal.App.5th at p. 1098, rev. granted (discussing Senate Concurrent Resolution 48).)

In February 2018, Senator Skinner introduced Senate Bill 1437, and the bill proceeded to the Senate Committee on Public Safety.  The associated committee report highlighted lengthy punishments for first- and second-degree murder and referenced the need "to restore proportional responsibility in the application of California's murder statute."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, pp. 2-3; see Pen. Code, § 190, subd. (a).).  In providing background on murder liability, the report explained that murder was "the most egregious form of homicide," required malice, and (critically) was distinguishable from manslaughter "because the element of 'malice' is required to be convicted of murder."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437, *supra*, p. 4.)

Senate Bill 1437 then proceeded to the Senate Appropriations Committee.   Again, the associated report distinguished murder from manslaughter "due to the additional element of malice, which may be express or implied."  (Sen. Com. on Appropriations, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 2.)  Evaluating the

21cv0432-WQH (KSC)

bill's fiscal impact, the report cited "CDCR reports that a snapshot on December 31, 2017 showed 14,473 inmates were serving a term for the principal offense of first-degree murder and 7,299 were serving a term for the principal offense of second-degree murder." (*Id.* at p. 3.)

With minor amendments, Senate Bill 1437 proceeded to the Senate floor.  A bill analysis highlighted the lengthy prison terms for first- and second-degree murder.  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, pp. 1-2.)  After clearing the Senate, the draft bill was sent to the Assembly Committee on Public Safety, whose report likewise commented on the mandatory life terms for murder.  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, pp. 3-4, 5.)  Quoting bill proponents, the Public Safety Committee's report suggested reform measures would have to look beyond nonviolent offenders "(t)o meaningfully reduce prison populations and repair the harm of decades of mass incarceration." (*Id.* at p. 7.)  Senate Bill 1437 next reached the Assembly Committee on Appropriations, whose report again noted the lengthy prison terms for murder and suggested reform to permit "individuals previously sentenced on a theory of felony murder to petition for resentencing if they meet specified qualifications."  (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, pp. 1-2.)

Amendments were made in the Assembly before Senate Bill 1437 reached a floor vote.  Significant for our purposes, the Assembly revised the petitioning procedure now found in section 1170.95, subdivision (a).  As passed by the Senate, the introductory clause provided: "A defendant may submit a request to have his or her conviction vacated and petition for resentencing when all of the following conditions apply . . . ." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended May 25, 2018, § 6.)  The Assembly amended this language to its enacted form: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and be resentenced on any remaining counts when all of the following conditions apply . . . ."  (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018, § 4; see Pen. Code, § 1170.95, subd. (a).)  The bill passed the Assembly; the Senate concurred in the Assembly amendments, and Senate Bill 1437 was signed into law.

We draw a few broad points from this detailed history.  First, the

21cv0432-WQH (KSC)

Legislature understood the distinction between murder and manslaughter and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory.  Second, nearly every committee report and analyses made note of the life sentences imposed for defendants convicted of first- or second-degree murder.  One report based cost estimates on the number of inmates serving terms for first- or second-degree murder.  Finally, the petitioning procedure was restricted by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory.  Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95.  The trial court did not err in summarily denying relief.

> b.   *No Absurdity Results from This Construction*

Turner objects that our construction of section 1170.95, subdivision (a) to categorically deny relief to those convicted by plea of manslaughter would create absurd consequences.  "Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent."  (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1105.)  But our interpretation does neither.  The uncodified legislative declarations and findings in Senate Bill 1437 make repeated references to "murder," underscoring the need to amend the natural and probable consequences doctrine "as it relates to murder," but include no references to manslaughter.  The petitioning prerequisites and available relief all presuppose a murder conviction.  And the legislative history underscores that the Legislature did not intend to extend relief to persons like Turner, who were convicted of manslaughter by plea.

Nor does our construction produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability.  The punishment for manslaughter is already less than that imposed for first- or second-degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and 2, 3, or 4 years for involuntary manslaughter permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors.  (Pen. Code, § 193, subds. (a)-(b); see *Munoz*, *supra*, 39 Cal.App.5th at pp. 757-758, rev. granted.)  Providing relief solely to defendants convicted of murder under a felony-murder or natural-and-probable consequences theory does not conflict with the Legislature's stated objective to make "statutory changes to

more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch.1015, § 1, subd. (b).)

### 3.   *The Factual Basis Requirement*

Having found that Senate Bill 1437 does not extend to defendants convicted of manslaughter, we acknowledge that in hindsight, Turner would have fared better by pleading guilty to murder. Because his liability would have been premised on Rusty's killing being a natural, probable, and foreseeable consequence of his participation in the assault, he could have petitioned for relief under section 1170.95. Instead he pleaded guilty to voluntary manslaughter, in the process admitting every element of that offense. (See *In re Chavez* (2003) 30 Cal.4th 643, 649.)

A voluntary manslaughter is an intentional and unlawful killing without malice usually based on a sudden quarrel, heat of passion or imperfect self-defense. (*Breverman*, *supra*, 19 Cal.4th at p. 154; see Pen. Code, § 192.) As the People state, "neither felony-murder nor the natural and probable consequences doctrine are theories on which one can commit voluntary manslaughter." (See *People v. Price* (2017) 8 Cal.App.5th 409, 430 ("Voluntary manslaughter thus is not a lesser included offense of felony murder"); *Chiu*, *supra*, 59 Cal.4th at pp. 164-165 (natural and probable consequences doctrine holds aiders and abettors of a target crime liable for nontarget offenses they have *naturally*, *probably*, and *foreseeably* put in motion).) By admitting voluntary manslaughter, Turner seems worse off for pleading guilty to a crime he likely could not have committed.

If there is a problem, it may lie in the adequacy of the factual basis for Turner's plea. Before a court can approve a conditional plea of guilty or no contest to a felony, it must "inquir(e) . . . of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea." (§ 1192.5.) Whatever method employed, a bare statement that a factual basis exists, without inquiry, is inadequate. (See generally, *People v. Holmes* (2004) 32 Cal.4th 432, 436; *People v. Palmer* (2013) 58 Cal.4th 110, 118 (*Palmer*).) The factual basis inquiry serves an important purpose:

> "One of the primary reasons an innocent defendant might plead guilty is 'the disparity in punishment between conviction by plea and conviction at trial.' (Citation.) Such a disparity is particularly likely to be a motivating factor for a plea when the charges expose the defendant to a potentially lengthy term or

21cv0432-WQH (KSC)

other severe punishment, and the prosecution offers substantially reduced punishment in exchange for a plea of guilty or no contest.   The Legislature could rationally have believed this situation—a negotiated plea—creates an especially high risk the defendant will plead to a crime he or she did not commit and for which no factual basis can be established.   Section 1192.5, third paragraph, is designed to protect against that result."

(*People v. Hoffard* (1995) 10 Cal.4th 1170, 1182 (*Hoffard*).)

In the wake of Senate Bill 1437, there may be other cases like Turner's.   But defining crimes and prescribing punishment is the Legislature's role.   (*In re Lynch* (1972) 8 Cal.3d 410, 414.)   And the adequacy of the court's factual basis inquiry is not before us.   We are sensitive to Turner's perception that he is in custody "for a crime he did not commit" and to his frustrated expectation that after Senate Bill 1437 "he would get his case heard."   Yet we are constrained to conclude Senate Bill 1437 does not provide him an avenue for relief.

*Turner*, 45 Cal. App. 5th at 434-41 (footnotes omitted).

The state appellate court explicitly addressed and rejected Petitioner's claim that the trial court erred in finding he was not entitled to resentencing under Senate Bill 1437 and California Penal Code Section 1170.95. The appellate court did not explicitly address the claim, which was properly presented to the court, that the misapplication of those laws by the trial court violated federal due process, although the court impliedly rejected that federal claim by rejecting the claim of trial court error.   "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).   "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100.   There is no basis in the record to rebut the presumption that the state court reached the merits of Petitioner's federal due process claim. *Id*.; *see also Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that AEDPA deference does not apply only where "no adjudication on the merits in state

court was possible").  Petitioner bears the burden of "showing there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

After the state court issued its opinion, California courts consistently rejected Petitioner's reading of those state laws, further undermining any contention the application of the state law is arbitrary or capricious or based on a misinterpretation of the law.  *See People v. Sanchez*, 48 Cal. App. 5th 914, 916 (Cal. App. Ct. 2020) (defendant charged with first degree murder with gang enhancement who entered guilty plea to voluntary manslaughter and admitted enhancement not entitled to § 1170.95 relief); *People v. Flores*, 44 Cal. App. 5th 985, 989-90 (Cal. App. Ct. 2020) (defendant charged with murder with robbery and gang enhancements who entered guilty plea to voluntary manslaughter and admitted enhancements not entitled to § 1170.95 relief); *People v. Cervantes*, 44 Cal. App. 5th 884, 887 (Cal. Ct. App. 2020) (defendant charged with murder who entered guilty plea to manslaughter not entitled to § 1170.95 relief).

Petitioner has failed to show that the determination by the state court that he is not eligible for resentencing under Senate Bill 1437 and California Penal Code Section 1170.95 because he was not convicted of murder is incorrect, much less that it is so arbitrary or capricious as to amount to a federal due process violation or amounts to subterfuge to avoid review of his federal claim.  *See Richmond*, 506 U.S. at 50 (holding that a state court's application of state law does not rise to the level of a federal due process violation unless it was so arbitrary or capricious as to constitute an independent due process violation); *Knapp*, 667 F.2d at 1260 ("Federal courts will not review a state supreme court's interpretation of its own statute unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution."); *Trombetta*, 467 U.S. at 485 ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.").

The state court adjudication of Petitioner's federal due process aspect of Claim One is neither contrary to, nor an unreasonable application of, clearly established federal law,

and does not involve an unreasonable determination of the facts.  28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405-07; *Miller-El*, 537 U.S. at 340.

## 2. Eighth and Fourteenth Amendments

Petitioner claims his right to be free from cruel and unusual punishment under the Eighth Amendment has been violated because he is serving a term of imprisonment for a crime he did not commit, and that he has been denied equal protection of the laws in violation of the Fourteenth Amendment because he is being treated differently than defendants who benefit from the changes in the law by Senate Bill 1437 and California Penal Code Section 1170.95.  (ECF No. 16 at 8).  As set forth above, Petitioner did not present these aspects of Claim One to the state court and they are procedurally defaulted.

Petitioner attempts to overcome the default by arguing he is actually innocent of voluntary manslaughter, stating that he "did not kill Rusty Seau and the idea never entered [his] mind" and he therefore could not have been convicted of manslaughter.  (ECF No. 16 at 11).  He argued in state court that he would not have pleaded guilty to the gang enhancement if he had known his co-defendant Tony Lessie would be acquitted of the gang allegations at his trial, even though Lessie's jury deadlocked on the gang enhancement almost eight months before Petitioner entered his guilty plea.  (ECF No. 15-17 at 7).  He also argued in state court that Lessie's acquittal on the gang enhancement means there is no evidence to support Petitioner's gang enhancement.  (*Id*.).

In order to establish actual innocence sufficient to satisfy the "exacting gateway standard established by the Supreme Court in *Schlup*" to overcome a procedural default, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 324); *see also Schlup*, 513 U.S. at 327 (requiring presentation of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" establishing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent.")  This Court "must consider 'all the evidence,'

old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327-28). "A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that '"a court cannot have confidence in the outcome of the trial.'" *Majoy*, 296 F.3d at 776 (quoting *Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1997)) (en banc).

Before Petitioner entered his guilty plea, his co-defendant Tony Lessie was convicted by a jury of second degree murder while intentionally and personally using a firearm and sentenced to forty years to life in prison. *See Lessie*, 47 Cal. 4th at 1157. The state supreme court stated that Lessie's "confessions were generally consistent with the other evidence admitted at trial, including his own testimony," which showed that:

> Defendant [Lessie] claimed he had been forced to shoot by James Turner, with whom he had been living. Turner, who used the gang moniker "Black Jack" and claimed membership in gangs affiliated with the Crips, forced a confrontation with Seau and another man over an offense given earlier in the day. Defendant, who used the moniker "Blue Devil," denied belonging to a gang but admitted wanting to join. On the way to the confrontation, riding in a car with defendant and two others, Turner gave defendant a pistol and told him he "better shoot. You got to shoot somebody." Defendant described the shooting as "like an initiation thing" and believed he would be beaten or killed as "discipline" if he did not do as he was told. Upon arriving at the scene of the confrontation, defendant, Turner and the others found that Seau and his companion did not want to fight. Turner nevertheless "banged" on Seau by announcing his gang affiliation, which Seau in turn mocked, and Turner and a companion then attacked Seau. At this point, Turner shouted at defendant to shoot. As Seau attempted to run away, defendant shot him fatally in the back.

*Id.*

Lessie confessed during two custodial interrogations which took place in September 2005 and January 2006, *id.* at 1157-60, which formed the basis of a motion to sever the trials filed on August 18, 2006, a copy of which is in this Court's file in Lessie's own

federal habeas action.[3]  *See* ECF No. 13-2 at 27-150 in *Lessie v. Virga*, So. Dist. Ca. Case No. 10cv2065-IEG (RBB).  Lessie told police that he and Petitioner were passing out flyers and attempted to speak to a woman passing by, who refused to speak to them, and when they later went to visit Petitioner's girlfriend outside her nearby workplace they encountered two rival male gang members talking to her who told Lessie and Petitioner they should not have spoken to the other woman because she was one of their girlfriends, and told Lessie and Petitioner where to meet them to fight.  *Id*. at 126-27.  Lessie said they retrieved a gun from Petitioner's apartment where they were joined by Petitioner's cousin, Petitioner gave Lessie the gun, instructed him how to use it, told him he had to shoot one of the men or be disciplined by being jumped or killed, and then drove to the meeting place where the men said they did not want to fight but Petitioner and his cousin started a fight and Lessie shot Seau on Petitioner's order.  *Id*. at 127-34.  Petitioner's girlfriend told police that shortly after the shooting he hid the gun in the trunk of her car and said he had gotten into an argument with several men and went to meet them to fight but encountered different men, and they got into an argument and Seau happened to walk by and was shot.  *Id*. at 37-39.  Several witnesses identified Petitioner as present during the shooting and one indicated he heard Petitioner or his cousin tell Lessie to shoot Seau.  *Id*. at 53-68.

On November 6, 2006, Lessie was found not guilty of first degree murder but guilty of second degree murder with true findings on the firearm use allegation, with the jury deadlocked on the gang enhancement for which a mistrial was declared, and his post-conviction motion to have his conviction reduced to voluntary manslaughter was denied. *Id*. at 267-69.  Petitioner entered his guilty plea over eight months later, on July 27, 2007, well after he was or should have been aware of the outcome of Lessie's trial and the evidence presented there, namely, that Lessie approached the victim on the orders of Petitioner to shoot someone in order to show his commitment to joining Petitioner's gang

---

[3]  The Court takes judicial notice of its own proceedings as they "have a direct relation to matters at issue."  *United States v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992).

or suffer discipline, that Petitioner instigated an argument based on gang affiliations, and that Lessie shot the victim on Petitioner's orders in fear he would be beaten or killed if he refused.  *Lessie*, 47 Cal. 4th at 1157.

Petitioner presents no new evidence in support of his *Schlup* claim, but argues that the circumstances changed when murder liability under state law was redefined and when his co-defendant was acquitted of the same gang enhancement with which he was charged. Under the *Schlup* standard, Petitioner's failure to produce evidence precludes a finding that "a court cannot have confidence in the outcome" of his voluntary manslaughter conviction. *Majoy*, 296 F.3d at 776.  Existing evidence of Petitioner's intent and role in the underlying felony further undermines a claim of actual innocence.  *See Salazar v. Spearman*, No. LACV 19-8996-JAK (LAL), 2021 WL 4539080, at *9-10 (C.D. Cal. Aug. 30, 2021) (finding voluntary manslaughter appropriate where petitioner enlisted a fellow gang member to help hunt down rival gang member following an altercation who shot and killed the rival gang member, and rejecting petitioner's contention he could not have been guilty of any crime without being the shooter or having intent to kill) (citing *People v. Beeman*, 35 Cal. 3d 547, 561 (1984) ("a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.")).

Even were Petitioner to overcome the default, his claim lacks merit.  The standard of review for claims that are technically exhausted and procedurally defaulted is unclear. *Slovik v. Yates*, 556 F.3d 747, 751 n.4 (9th Cir. 2009).  However, denial of such a claim under a de novo review assures a finding that habeas relief is unavailable irrespective of any procedural default or failure to exhaust.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding that when the standard of review is unclear, a federal habeas court may conduct a de novo review to deny a petition "because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.")

21cv0432-WQH (KSC)

The Eighth Amendment aspect of Claim One fails because the cruel and unusual punishment clause "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (life without parole for possession of 650 grams of cocaine did not constitute cruel and unusual punishment)). Petitioner has made no showing that his 11-year sentence for voluntary manslaughter and 10-year gang enhancement are in any manner disproportionate to his participation in the killing of Rusty Seau, which he admitted at his plea hearing he participated in for the benefit of, at the direction of, and in association with a criminal street gang, and which the evidence at Lessie's trial showed he ordered Lessie to shoot Seau for the benefit of Petitioner's gang and threatened to kill or injure Lessie if he did not shoot Seau.

Petitioner's Fourteenth Amendment equal protection claim is also without merit. Federal equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Petitioner is not similarly situated to the persons who benefit from the changes in the law by Senate Bill 1437 and California Penal Code Section 1170.95, who are people convicted of murder under a felony murder theory or a natural and probable consequences theory.

Accordingly, habeas relief is denied as to the Eighth and Fourteenth Amendment aspects of claim one on the basis they are procedurally defaulted and without merit.

### C.   Claim Two

Petitioner alleges in Claim Two that the state court failed to ascertain a factual basis for the plea, which lacks a factual basis. (ECF No. 1 at 5). Petitioner does not identify a federal basis for this claim in the Petition, but states in the Traverse that Claim Two presents the same Sixth, Eighth and Fourteenth Amendment claims as Claim One. (ECF No. 16 at 8-14). Respondent answers that Claim Two is untimely because it was filed at least nine years after expiration of the one-year federal statute of limitations, it fails to present a cognizable federal claim because the entry of a guilty plea on the advice of counsel generally forecloses all collateral attacks other than jurisdictional claims, and it

lacks merit because the change in law does not apply to him and there is no prohibition against inconsistent verdicts regarding the gang enhancement. (ECF No. 14-1 at 22-27).

Petitioner presented Claim Two to the trial court in a habeas petition filed on November 20, 2020. (*See* ECF No. 15-15 at 41). The trial court denied the petition on November 23, 2020, on the basis that Petitioner could have raised this claim in one of his three prior state habeas petitions but did not, that it was untimely, and that he failed to make a prima facie showing of an entitlement to relief. (*Id.* at 40-42). On December 29, 2020, Petitioner filed a pro se habeas petition in the state appellate court raising the same claim. (*Id.* at 1-45.) The appellate court denied relief on December 31, 2020, on the basis that: (1) the petition was barred by the failure to obtain a certificate of probable cause needed to attack the validity of a guilty plea, (2) it was untimely because it was filed more than 13 years after sentencing with no explanation for the delay, (3) it was barred as repetitive and successive to prior habeas petitions filed by Petitioner, and (4) because claims challenging the sufficiency of evidence to support a conviction are not cognizable on habeas. (ECF No. 15-16 at 2). Petitioner raised the claim in the state supreme court in a pro se habeas petition which was denied on May 12, 2021, in an order which stated: "The petition for writ of habeas corpus is denied. (See In re Waltreus (1965) 62 Ca.2d 218, 225 [courts will not entertain habeas corpus claim that were rejected on appeal].)" (ECF No. 15-18 at 1). He presented the same federal claim in state court as he does here. (ECF No. 15-15 at 4-5; ECF No. 15-17 at 17; ECF No. 16 at 8-12). Respondent contends the claim is untimely because it was filed after expiration of the one-year statute of limitations in 28 U.S.C. § 2244. (ECF No. 14-1 at 22-24.)

A one-year statute of limitations applicable to federal habeas petitions pursuant to 28 U.S.C. § 2254 begins to run at the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is

removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Because Claim Two relies on events of which Petitioner was aware when he entered his guilty plea, 28 U.S.C. § 2244(d)(1)(A) provides the triggering date. Since he did not appeal his guilty plea, the triggering date is the last day he could have filed an appeal. *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012). Petitioner entered his guilty plea on July 27, 2007. (ECF No. 15-1 at 33.) His appeal was due 60 days later, September 25, 2007. *See Roberts v. Marshall*, 627 F.3d 768, 771 (9th Cir. 2010) (citing Cal. R. Ct. 8.308(a)). The one-year federal statute of limitations began to run the next day. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, Petitioner had until September 24, 2008 to timely file a federal habeas petition challenging his plea.

Petitioner filed his federal Petition in this action on March 3, 2020, over eleven years late. Even to the extent he is entitled to statutory tolling of the limitations period during the time he was pursuing state habeas petitions from November 1, 2007 to April 26, 2011, the statute of limitations would have expired on April 25, 2012, and the Petition is still nearly eight years late. There is no basis for equitable tolling. To the extent Petitioner contends he can establish actual innocence to excuse the untimely filing his contention is without merit as discussed above in Claim One.

Federal habeas relief is denied as to Claim Two because relief is precluded by Petitioner's failure to file his Petition within the one-year statute of limitations for federal habeas petitions filed pursuant to 28 U.S.C. § 2244.

///

21cv0432-WQH (KSC)

## V.      Evidentiary Hearing

Petitioner requests an evidentiary hearing in his Traverse.  (ECF No. 16 at 2).  The request is denied because even assuming the allegations in his Petition are true the state court record provides an adequate basis to adjudicate his claims.  *See Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) (holding that an evidentiary hearing is not necessary where the federal claim can be denied on the basis of the state court record, and where the allegations, even if true, do not provide a basis for relief).

## VI.     Petitioner's Motion to Dismiss

Petitioner requests this action be dismissed without prejudice, so that he can file an amended petition after he has pursued resentencing pursuant to Senate Bill 775, which he contends will go into effect on January 1, 2022, and will make Senate Bill 1437 applicable to defendants like him who pleaded guilty to manslaughter to avoid a murder conviction. (ECF No. 18).  There is no basis to stay this action or allow Petitioner to amend his Petition after seeking relief under Senate Bill 775.  Assuming Petitioner is denied relief in state court and assuming he can articulate a federal habeas claim arising from that denial, he may file a new federal habeas petition asserting those new federal claims which have not yet arisen and which would have no relevance to the claims presented in the instant Petition challenging the 2019 state court finding that Senate Bill 1437 is not applicable to him and the factual basis of his 2007 plea.

## VII.    Certificate of Appealability

The Court is required to grant or deny a Certificate of Appealability when entering a final order adjudicating a 28 U.S.C. § 2254 habeas petition.  *See* Rule 11, rules foll. 28 U.S.C. § 2254.  "[T]he only question [in determining whether to grant a Certificate of Appealability] is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented [including procedural issues] are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 773 (2017).  Applying that standard, a Certificate of Appealability is not appropriate as to any claim presented in the

21cv0432-WQH (KSC)

Petition or Traverse.

**VIII.  Conclusion and Order**

Based on the foregoing, the Petition for a Writ of Habeas Corpus (ECF No. 1) is denied, Petitioner's Motion to Dismiss (ECF No. 18) is denied, and a Certificate of Appealability is denied.  The Clerk of Court shall enter judgment accordingly.

Dated:  November 8, 2021

Hon. William Q. Hayes
United States District Court

21cv0432-WQH (KSC)